# SUCESIÓN GUTIERREZ DEL ARROYO ET AL.
### *v.*
# J. G. WHITE & COMPANY ET AL.

---

San Juan, Equity, No. 512.

1. Where the making of an agreement is denied by a respondent, the burden is immediately put upon the complainant to show the existence of the contract, before a court will consider the matter of its specific performance.

2. A court will not hold a contract to exist as against a respondent who denies the same, and where it appears that the agent, who, it was claimed, entered into the same for such respondent, specifically provided that it should not be binding upon the party referred to until the latter had consented to the same in writing.

3. Complainants own adjoining tracts of land over which a power line must, of necessity, pass. The franchise for the power line belonged to one respondent. A construction company was building the line. The agent of the latter, in its eagerness to finish its work, entered into an agreement with the owners of the land, by which it was provided that the latter should have certain rights to light and power at

Gutierrez del Arroyo v. J. G. White & Co.

certain rates, in consideration of permitting the power towers to be built over their land; but the agreement provided that it should not be binding upon the owner of the franchise until the latter's written consent was obtained thereto. The consent was never given, but, on the contrary, the agents of the owner of the franchise repudiated it at the first opportunity. In the meantime, the construction company, by leave of the landowners, had gone on and built the towers. Held: That the contract, if any existed, was only between the landowners and the construction company, and that hence the remedy of the landowners is at law. Such an agreement cannot be enforced against the owners of the franchise.

Opinion filed May 12, 1910.

*Messrs. Sweet & Wilcox,* solicitors for the complainants.

*Mr. H. F. Hord,* solicitor for the respondents.

Rodey, Judge, delivered the following opinion:

This cause has been on the docket about two and a half years. It is a bill in equity to enforce the specific performance of an alleged contract between the parties. A lot of time was consumed in and about filing amended bills, demurring to same, moving for new parties, applying for an injunction, hearings against the same, answering and filing cross bills, etc., etc. Finally, on February 21, 1910, the case was heard by the chancellor in open court without the intervention of an examiner or master, when exhibits were presented and the oral testimony heard. The stenographer thereafter transcribed his notes of the evidence, and counsel for the respective parties filed short writ-

Gutierrez del Arroyo v. J. G. White & Co.

ten arguments, but without citing authority for the propositions advanced. The court has just gone over all of the exhibits, the evidence, and these arguments, and has glanced through the pleadings from beginning to end; therefore we are prepared to decide the cause upon the merits; but owing to the shortness of time at our disposal, will follow counsel's action in their arguments, and will not cite authorities. In fact, the case turns upon a few questions of fact and upon such simple legal principles that we do not deem it necessary to cite authorities. Our knowledge of the record and the facts is such as that we can avoid reference to a lot of the unnecessary pleadings, and make a statement of the case which will show our reasons for the positions we take. The facts are about as follows:

Complainant Rafael del Arroyo, representing his father's estate, owned by himself and several other of the heirs, and the other complainant, Robert Graham, as well as one Cerecedo (who is not a party to the bill, but who figures in the record and in the proofs), are the owners of several tracts of land south of the bay of San Juan and east of the town of Bayamon, Porto Rico. These tracts of land are contiguous. The smaller portion is owned by Graham alone, and a quite large portion is owned by the Sucesión del Arroyo and Graham jointly,—Cerecedo owning his lands separately.

The respondent the Porto Rico Power & Light Company is a corporation that owns or owned the franchise to create electric light and power from the Comerio waterfall, situated about 17 miles south of San Juan, Porto Rico, and from which the power lines are built north to San Juan, and cross the land in question.

J. G. White & Company is a corporation that was constructing the towers upon which the wires to conduct the current were

Gutierrez del Arroyo v. J. G. White & Co.

carried from the falls northward over the land in question to San Juan, for use in lighting the city, running the street cars, and for other purposes. At the time J. G. White & Company were building the line, some months before the filing of the bill in this case, two of their men, one Strickland, the superintendent of construction, and his assistant, Mr. Kelley, approached complainants to get leave to build the towers across their land. It seems that complainants, or, at least, Mr. Graham, conceived the idea that it would be a good thing, in consideration for permitting the towers to carry the wires to be built upon their land, to enter into a contract to get power and light for such purposes as they might require on their plantations, such as for their residences, ice plants, fruit canning establishments or other industries they might establish thereon. It seems, also, that, as the lands in question are relatively near San Juan, there would ordinarily be no transforming station placed there, and thus it would be impossible to get light and power from these heavily charged conducting main wires that were strung on the towers, unless a couple of back wires from the transformer at Rio Piedras should be strung upon the same towers back to the plantations. Therefore negotiations looking to this end were entered into between these men Strickland and Kelly, on the one side, and Graham, Arroyo, and Cerecedo, on the other, and finally they entered into an agreement which is filed with the bill and was put in evidence, which reads as follows:

Agreement entered into between J. G. White & Company, party of the first part, and Robert Graham, party of the second part.

In pursuance of a franchise granted Porto Rico Power &

Gutierrez del Arroyo v. J. G. White & Co.

Light Company, the development of the water power at Comerio, and its transmission line to San Juan, the party of the first part intends to erect a line of towers with transmission wires thereon through the property of the party of the second part, of which he is a part owner.

In consideration of the agreements set forth hereunder, the party of the first part agrees as follows:

1. To carry and install a two-wire system from their lighting wires at Martin Peña back along their transmission line towers through the property of Las Monjas, Cerecedo, and Arroyo, with a single phase alternating current, 2,300 volts.

2. The party of the first part agrees to install transformers of suitable size for the lighting, ice machine, and pumping of the private dwelling of the party of the second part, his successors and assigns.

3. The party of the first part agrees to string wires from said transformers on the transmission line to the dwelling of the party of the second part.

4. All of the above installations to be carried on by the party of the first part, and the expense thereof to be borne by same.

5. Party of the first part agrees to furnish current for power purposes up to 25 horse power, total of the said promises of the party of the second part.

6. The party of the first part agrees to obtain the written and legal approval of the present owners of the Porto Rico Power & Light Company, their assignees and successors, to the conditions contained herein.

7. The party of the first part agrees to pay cost for any damage done to crops or trees during the construction and erection of its line.

For and in consideration of the above agreements, the party of the second part agrees as follows:

1. To allow the party of the first part to erect on his property, towers and wires for the transmission line, as agreed upon by the engineers of the party of the first part, and the property owner of the second part, on the ground, approximately, as follows:

From the towers on or near Wall's property, west of Arroyo's estate, to swing further to the north, and follow the gully down through the Arroyo estate, just below the old ruins near the road; then by a straight line across the tracks of the American Railroad Company to the estate of Cerecedo.

2. The party of the second part agrees to allow, for purposes of construction, the transportation of towers, cement, sand, stone, gravel, etc., through their property, and all necessary articles for the construction of same, and the lines following the natural roads as far as practicable. However, after the final completion of the transmission line, towers and wires, admission is hereby granted to an inspector on foot or horseback along said line, and in case of repair or the installation of further wires for lighting or power, the party of the first part will be granted permission by the party of the second part for temporary construction outfit.

3. The party of the second part agrees to the cutting off of any trees over 35 ft. in height within 35 ft. of the center line of the wires, in order to protect said transmission line from overhanging branches during storms.

4. The party of the second party agrees, in the event of installation of light and power on his premises, to pay for same at the regular rates specified in franchise for San Juan, and

Gutierrez del Arroyo v. J. G. White & Co.

making the necessary installations for same on his immediate premises at his own expense, except such as are previously specified.

5. In order that the party of the first part may string wires to the premises of the party of the second part, it is agreed that the pole line right of way will be granted or obtained by the parties of the second part.

6. It is understood by the parties of the second part that the poles, wires, and other necessary supports, fixtures, and apparatus remain the property of the Porto Rico Power & Light Company, its successors and assigns.

7. And it is further understood that the party of the first part may later supply the electricity for lights and power from Comerio direct, or from other substation which may later be erected.

8. For and in consideration of the above agreements, the party of the first part further agrees to make out in writing a legal conveyance of the rights herein mentioned before a notary, upon the obtaining by the party of the first part of a ratification of this agreement by the Porto Rico Power & Light Company, its assignees or successors, and the erection of the towers and wires is to begin at once, with the stipulation as mentioned in clause No. 6 of the agreements of party of the first part.

9. The life of the above mentioned agreement to be perpetual.

10. Party of the first part may extend the line from the premises of party of the second part to other places, provided that, in case of setting of additional poles, it will be subject to new arrangement to be made between the parties.

11. Also, it is specified that the party of the second part may use such part of the service of 25 H. P. as he does not use per-

Gutierrez del Arroyo v. J. G. White & Co.

sonally, for the Robt. Graham Company, their successors or assigns, and the price and other conditions specified in this contract to be the same as specified previously for the party of the second part.

Approved by

    W. R. Strickland, Oct. 17th, '07,

       Construction Superintendent.

Charge to cons. acct.

    R. of U. Trans. Line.

                    (Signed)   Robert Graham.

This agreement, as can be seen, was signed only by Strickland, on the one hand, and Graham, on the other, and reads, as can be seen, between J. G. White & Company and Graham. Strickland's signature appears to be appended to it, not as a direct party, but only in this form: "Approved by W. R. Strickland, October 17th, '07, Construction Superintendent." The evidence showed that this agreement or alleged contract was framed entirely by J. G. White & Company's notary, at the request of the parties, and that all of them, that is, Strickland, Graham, Gutierrez, and Cerecedo, were present when the Graham copy was signed. It also appeared from the evidence that two other copies, one for Cerecedo and one for Gutierrez del Arroyo, were made in Spanish, but that those gentlemen refused to sign them until they should have an opportunity to see their attorney and have him inspect the instrument. It turned out that immediately thereafter, or at least, within a day or so thereafter, but, at any rate, just as soon as they saw the alleged contract, the agents on the Island for the Porto Rico Power & Light Company and the San Juan Light & Transit Company,

Gutierrez del Arroyo v. J. G. White & Co.

which latter was supposed to have some interest in the matter, as well as the attorney for both of the latter concerns, refused to enter into this bargain or to sign or approve this contract, and, as the parties could not agree, the work was ordered stopped, and the removal of the towers from the land was threatened, but complainants obtained an injunction in this court to prevent them from removing several of the towers which they had, in the meantime, erected on the lands in question.

It is unnecessary to detail, as shown by the evidence, all the efforts that then ensued between the parties to come to some kind of an agreement, the result being that they failed to agree; but at length respondent J. G. White & Company went on and finished the building of the towers, under a bond which they deposited in the court, by its leave, but neither of the respondents ever acknowledged the right of Strickland to make the contract in question, and their building of the towers, it was understood in court, was not to be considered as a ratification of the said alleged contract.

On the one hand, complainants contend that they are entitled to a specific performance of this alleged contract, which they say they value highly, and state they offered to waive some conditions which the draft of the so-called contract contained, with reference to the rate to be charged for the light and power, and with reference to duration of the contract whenever it conflicted with the franchise for building the power line. On the other hand, respondents contend that they never in fact made the contract, nor authorized any agent of theirs to make it for them, but that they refused to ratify or accept it the first knowledge they had of it, and that the so-called contract on its face shows that it was not a complete meeting of minds, and that it is not

V. Porto Rico—37.

signed by all the parties, either complainant or respondent, to be bound thereby, and therefore that it is not their contract, or in fact a contract at all.

Now it will be seen that the opening clause of the agreement *supra* states that it is entered into between J. G. White & Company, party of the first part, and Robert Graham, party of the second part, and it is approved by the signature of Strickland, on the one hand, and signed by Graham, on the other. It will also be noticed that clause 6 in the J. G. White portion of the agreement sets forth that they, J. G. White & Company, "agree to obtain the written and legal approval of the present owners of the Porto Rico Power & Light Company, their assignees and successors, to the conditions contained herein." And that clause 8 in the Robert Graham portion provides that the latter will "make out in writing a legal conveyance of the rights in the agreement mentioned, before a notary, upon the obtaining by the party of the first part (White & Company) of a ratification of this agreement by the Porto Rico Power & Light Company, its assignees or successors, and the erection of the towers and wires is to begin at once, with a stipulation as in clause 6 of the agreement of the party of the first part."

Now, from all of the evidence in the case, and particularly from these contracts, it is manifest to us, and we so find, that Graham and these other parties, at the time this so-called agreement was drawn up, knew that the Porto Rico Power & Light Company was the real owner of the franchise, and that it therefore was the concern that must furnish the power and light to them under the agreement they were about to make. They also evidently knew, or ought to have known, that J. G. White & Company were mere contractors for the construction of the power line.

Gutierrez del Arroyo v. J. G. White & Co.

We do not think it varies the situation to refer to the fact that this concern of J. G. White & Company are great national contractors that are said to work in the Philippines, the West Indies, and all over the nation as promoters, construction companies, contractors, and securers of franchises, etc., and that it is often hard to keep track of them and ascertain just who is who in connection with their wheels-within-wheels business, because, no matter in how many different forms they may appear as corporations, or who are associated with them in the different associations, each corporate entity has in law an existence and has rights. To our mind, the contract or agreement that was sought to be entered into was, as to the respondents, a joint one, even though the parties own some of the land separately. Cerecedo in fact is not a party to the suit, as he owned his own land separately, and, as it is understood, has a suit pending in an insular court to assert his rights. The light and power was to be given to them separately, but the wires and fixtures necessary to deliver it were to be erected for them jointly; hence, as we see it, to make a contract between the parties there must have been a complete meeting of the minds of all the parties in interest. We do not think it can be successfully contended on the evidence that Del Arroyo, for himself and the succession, ever signed any agreement, even though he is willing to do it, and the same can be said of Cerecedo, although he is not a party to this proceeding. The mere fact that Mr. Graham took the copy that was to be his, and carried it off before the whole bargain was made or ratified, did not, in our opinion, constitute the transaction a contract such as is now contended to exist between the parties. Nor does the evident honest belief and good faith of Mr. Graham as to the whole matter make the

transaction a binding contract. The Porto Rico Power & Light Company was the owner of the franchise, and the most necessary party to the contract, yet it never signed any contract or agreed to any contract, but, on the contrary, repudiated the agreement which it is claimed was made for it at the first opportunity. It is contended that because respondents, or one of them, went on and built the towers and afterwards used the line, they ratified the agreement by taking advantage of it. This is not so, because, as stated, when they went on and finished the line, or, perhaps, when White & Company went on and finished it for them, it was understood in open court that such fact should not be considered as a ratification by either of the respondents. It must be remembered, also, that the bargain to let the building go on was with White & Company, under a clause of the agreement, and not with the Porto Rico Power & Light Company.

The Porto Rico Power & Light Company, as will be seen by the suit of Arpin v. Porto Rico Power & Light Co. 2 Porto Rico Fed. Rep. 314, is, and was, when this alleged contract was made, vested with a franchise to create electric light and power from this Comerio waterfall, and was vested with the power of eminent domain, which, we understand, it has since exercised, or is now exercising as to this very land. If it is contended that, at any rate, J. G. White & Company, by their construction superintendent, made this bargain and afterwards ratified it, and took advantage of it, and that they should not now be permitted to repudiate it, the answer is that if they are liable, well and good; let these complainants, or those of them who may have a good cause of action, sue them at law; there is certainly no cause of action in equity against J. G. White & Company,

Gutierrez del Arroyo v. J. G. White & Co.

because they were not the owners of the thing which Graham et al. were bargaining for; that is, the power and light; and could not, and cannot now, deliver it, and Graham et al. knew this, and hence we can see the reason for inserting clauses 6 and 8, above referred to in the agreement, wherein it was provided that Strickland should get the ratification and approval of the Porto Rico Power & Light Company to the bargain, both realizing at the time, as we believe, that at least the latter concern would not be bound. To our mind, White & Company were simply eager constructors, trying to get their contract done, and Graham et al. were eager to get power and light, and they hurriedly made this agreement, each well knowing the necessity of its ratification by the Porto Rico Power & Light Company.

We are not passing upon what the right of Graham et al. may be with reference to getting light and power from the owners of this franchise, for use on their plantations like any other citizen, at any time. That is something they can enforce in another way if it becomes necessary, but we are asked here to say that the respondent the Porto Rico Power & Light Company, which is the only concern now really interested as a respondent, shall be obliged to comply with every one of the terms made by J. G. White & Company in the foregoing agreement, for the full life of its franchise, when in truth and in fact, as we unhesitatingly find from the evidence, it never entered into the agreement, but, on the contrary, refused to do so, and repudiated it at the first opportunity. It is useless to ask a chancellor to enforce the specific performance of a contract that does not exist.

Therefore we find all the issues for respondents, and their counsel may prepare a decree making the proper findings of fact

and law in accordance with the views here expressed, finding no contract such as can be specifically enforced, to exist, and hence dismissing the bill for want of equity, with costs to include the stenographer's fee of $24 for making the transcript; but the dismissal shall be without prejudice to any of these complainants to sue at law for any damages that may have accrued to them, or either of them, by reason of the action of J. G. White & Company, or their agents, and it is so ordered.